1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant United States Attorney
3  California Bar Number 234139
   880 Front Street, Room 6293
4  San Diego, California 92101-8893
   Telephone: (619) 557-6760
5  Facsimile: (619) 235-2757

6  Attorneys for Plaintiff
   United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR2272-BTM |
| Plaintiff, | **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| v. | **(1)   COMPEL DISCOVERY AND PRESERVE EVIDENCE;** |
| EDDY YANEZ SANCHEZ, | **ALONG WITH UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY.** |
| Defendant. | Date:   August 15, 2008<br>Time:   1:30 p.m. |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina M. McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motions and its Motion for Reciprocal Discovery. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

///

///

# I

# STATEMENT OF FACTS

**A.     Defendant's Crime**

Defendant, Eddy Yanez Sanchez, entered the San Ysidro port of entry on May 30, 2008 at approximately 12:05 a.m. Defendant was the driver and sole visible occupant of a dark four door sedan bearing California license plated. Customs and Border Protection ("CBP") Officer Xiomara Rodriguez was working in vehicle primary inspection lane seven. Defendant stated that he was not bringing anything from Mexico. During the inspection, Defendant was fidgeting and picking his nose. When Officer Rodriguez ran Defendant's information through her computer system, the system listed Defendant as a previous violator, with a conviction for narcotics distribution.

While Officer Rodriguez prepared to escort Defendant to the secondary inspection area, Defendant's vehicle began inching away from the inspection booth. Officer Rodriguez told Defendant to stop, but instead Defendant accelerated away from the inspection booth, with screeching tires. Officer Rodriguez activated the port runner alarm system. Within a few seconds, Defendant's vehicle reached speeds of between 30 to 40 miles per hour in an area filled with officers, and slow-moving traffic in the inspection areas. Defendant swerved away from the secondary inspection area and abruptly drove toward the U-turn area and southbound lanes to Mexico.

Officer Alfredo Olfato, who was wearing a full CBP uniform and performing official duties at the port, was assigned to work the U-turn area. Officer Olfato, who was in plain view and directly in Defendant's line of sight, motioned for Defendant to stop by holding up his arms. Defendant continued to drive right into Officer Olfato, striking him with the car at a high rate of speed. Officer Olfato was thrown onto the hood of the car, and had to hold onto the windshield wipers to avoid being thrown into traffic. Defendant abruptly applied the brakes, and Officer Olfato flew off the hood and windshield area, landing on the pavement. Defendant sped into Mexico and escaped into the night, leaving his birth certificate and California identification card with Officer Rodriguez. Officer Olfato was treated at the hospital for a variety of injuries inflicted by Defendant. Officer Olfato still has lingering knee problems caused by the assault, which will likely result in surgery.

1  **B.    Defendant's Apprehension**

2  Immigration and Customs Enforcement agents began an intensive search for Defendant. On May
3  30, 2008 at approximately 7:06 a.m., Defendant called ICE Agent Delgado from an unknown phone
4  number. Defendant said that he was afraid to turn himself in. Defendant said that when he was sent to
5  secondary inspection at the port, he got nervous and panicked. Defendant stated that he had not taken
6  his medication, and asked about how much time he was going to get. Agent Delgado said he could not
7  decide on the sentence, and it would be better for Defendant to speak to the case agent and turn himself
8  in. Defendant said he needed to think about it, and would call back.

9  On May 30, 2008, a federal magistrate judge signed a complaint charging Defendant with
10 forcibly assaulting a federal officer, in violation of 18 U.S.C. § 111, and signed an arrest warrant. On
11 June 9, 2008, at approximately 12:30 p.m., Defendant went to the San Ysidro port to turn himself in on
12 a possible arrest warrant.

13 At 12:56 p.m., Immigration and Customs Enforcement ("ICE") agents advised Defendant of his
14 Miranda rights in Spanish. Defendant acknowledged each of his rights and agreed to answer questions
15 about the offense. During the course of the interview, Defendant admitted striking a CBP officer during
16 his attempt to evade inspection and escape to Mexico. Defendant claimed he panicked, since he did not
17 have a valid driver's license when he drove into the port. Defendant said he was driving about forty
18 miles per hour right before he reached the U-turn area. When asked why he did not take the northbound
19 lanes to avoid hitting the CBP officer, Defendant said that if he had done so, he knew he would have
20 been caught due to the fact that the tires of his car would be slashed.

21 Defendant stated that he did not have any contraband in the vehicle when he hit Officer Olfato.
22 However, Defendant acknowledged that in the past he had smuggled drugs and illegal aliens across the
23 border. Defendant claimed that he had borrowed this vehicle from a friend known only as Roberto.
24 According to Defendant, Roberto was angry when Defendant returned the vehicle with a broken
25 windshield, dented hood, and bent windshield wiper, all a result of driving into Officer Olfato.

26 Defendant said that following his incident, he went to La Paz, Mexico, Defendant said that his
27 mother called him and convinced him to turn himself into the authorities.

28

1  Defendant was convicted in December of 2007 of possessing marijuana for sale or distribution, after being arrested at the San Ysidro port with 36 kilograms of marijuana concealed inside a Ford Aspire. Defendant was arrested several times in this district for alien smuggling in the past few years.

On July 9, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment against Defendant, charging him with: attempting to kill Officer Olfato, in violation of 18 U.S.C. § 1114; and forcibly assaulting Officer Olfato by driving directly at Officer Olfato and striking him with the vehicle, inflicting bodily injury, in violation of Title 18 U.S.C. §111.

**II**

**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.   ORDER COMPELLING DISCOVERY IS UNNECESSARY**

No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 98 pages of discovery as of the filing of this response, as well as a digital video recording of Defendant's post-arrest Miranda statements and a digital video of cameras at the port, along with videotaped witness statements. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

1.   Defendant's Statements

Defendant has already been provided with copies of reports detailing his statements prior to being taken into custody. Additionally, Defendant has a video recording of his post-arrest statements.

2.   Arrest Reports, Notes, and Dispatch Tapes

The Government has provided Defendant with all known relevant reports related to Defendant's arrest in this case that are available at this time. If any dispatch tapes exist, they will be provided to Defendant. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or Brady

3.   Brady Material

The United States will comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). Impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).

4-5.   Information that May Result in a Lower Sentence

Except to the extent that such material might fall within the province of Brady information, this request is unsupported by any case law or statute.

6.   Defendant's Prior Criminal Record

The United States has already provided copies of Defendant's rap sheet, covering any contact with United States law enforcement personnel. If Defendant has a criminal history in Mexico, the United States requests reciprocal discovery; otherwise, to the extent that any foreign criminal history exists, the information will be provided as discovery once this office obtains it. Documents relating to Defendant's 2007 marijuana conviction arising out of a smuggling incident at San Ysidro Port have also been provided to Defendant.

7.   Any Proposed Rule 404(b) Evidence

The Government will disclose in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). To the extent possible, the Government will provide the Rule 404(b) evidence to Defendant within three weeks prior to trial. The Government will also provide notice of all impeachment evidence by prior criminal convictions as required by Fed. R. Evid. 609.

1        8.    <u>Evidence Seized</u>

2        The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

7        The United States need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 583-84 (9th Cir. 1984).

9        9.    <u>Preservation of Evidence</u>

10       The United States will preserve all evidence to which the defendant is entitled to pursuant to the relevant discovery rules. The United States objects to a blanket request to preserve all physical evidence.

12       10.   <u>Tangible Objects</u>

13       The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

18       11, 12, 13, 14, 19, 21. <u>Giglio/Henthorn Information</u>

19       The United States will comply with the requirements of <u>Giglio v. United States</u>, 405 U.S. 150 (1972) and <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) by having agencies conduct a review of government agents' personnel files in advance of trial.

22       15.   <u>Witness Addresses</u>

23       The United States will provide the names of the witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the

law enforcement agents who apprehended him.  The names of these individuals have already been provided to Defendant.

16.     Witnesses Favorable to Defendant

As indicated above, the United States will comply with its discovery obligations to produce information that is exculpatory to Defendant, although it has discovered no such information as of this date.  To the extent that it discovers such information, the United States will provide information about witnesses who made favorable statements about Defendant.

17.     Statements Relevant to the Defense

Unless Defendant indicates which defense he is pursuing, it is incredibly difficult to determine any statement that might be relevant to any possible defense or contention that he might assert, and not required unless such statement qualifies as Brady material.

18. Jencks Act Material / Statements

The United States has or will comply with the disclosure requirements of the Jencks Act.  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes."  United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

20, 23  Expert Witnesses / Scientific Tests

The United States will comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.

22.     Cooperating Witnesses / Agreements With Witnesses

The government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). These threshold requirements have been interpreted to require that, if any cooperating witnesses or informants were involved or become involved, Defendant must show that disclosure of the informer's identity would be "relevant and helpful" or that the informer was the sole percipient witness before he would even be entitled to an in-camera evidentiary hearing regarding disclosure of the informer's identity. United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386-87 (9th Cir. 1991), quoting Roviaro v. United States, 353 U.S. 53, 60 (1957). The Government does not have any agreements that would benefit any witness it plans to call at trial.

## III

## UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that

1  Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial
2  to be set by the court.  This order should include any form these statements are memorialized in,
3  including but not limited to, tape recordings, handwritten or typed notes and/or reports.

## V
## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions, except where not opposed, be denied and the United States' motion for reciprocal discovery be granted.

DATED: August 12, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ Christina M. McCall

CHRISTINA M. McCALL
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>EDDY YANEZ SANCHEZ,<br>　　　　Defendant. | Case No. 08CR2272-BTM<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action.  I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY  on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　　Frank Balistrieri, Esq.

　　　I declare under penalty of perjury that the foregoing is true and correct.
Executed on August 12, 2008.

　　　　　　　　　　　　　　　　　　　　　/s/ Christina M. McCall
　　　　　　　　　　　　　　　　　　　　　CHRISTINA M. McCALL